**James D. ELMORE, Sr.**

v.

**Mark L. McCAMMON, Special Agent Rodriguez and Other Unknown Agents, Ronald Scott, Bracewell & Patterson and Other Unknown Agents, Marcella Perry, Heights Savings Association and One or More Unknown Banks and Unknown Agents; and John and Jane Does (1 to 25).**

Civ. A. No. H–85–5711.

United States District Court,
S.D. Texas,
Houston Division.

July 18, 1986.

---

James D. Elmore, Sr., pro se.

Mark E. Lowes and Tracie J. Renfroe, Bracewell & Patterson, Houston, Tex., and Christopher S. Cole, Tax Div., Dept. of Justice, Dallas, Tex., for defendants.

## MEMORANDUM AND ORDER

DeANDA, District Judge.

Plaintiff, a *pro se* litigant, has filed suit against numerous Defendants alleging improprieties in the foreclosure sale and enforcement of tax liens on a piece of real property in Montgomery County, Texas. The law of this circuit requires the Court to give extreme deferrence to a *pro se* litigant and search the record for any legitimate claims the Plaintiff may have. *See, e.g., Patterson v. Patterson*, 767 F.2d 916 (5th Cir.1985); *Green v. McKaskle*, 788 F.2d 1116 (5th Cir.1986). In keeping with this rule, the Court has endeavored to pierce the pleadings and investigate the factual basis for Plaintiff's claims by converting Defendants' motions to dismiss into motions for summary judgment. Having reviewed the pleadings and the record, the Court has determined that Plaintiff's claims are completely frivolous and that Defendants are entitled to summary judgment or dismissal as to each claim, as well as sanctions against Plaintiff under Federal Rule of Civil Procedure 11.

There are only two issues properly before the Court. First, Plaintiff claims that his bid of $23.00 in silver at a foreclosure sale pursuant to a deed of trust, to which he was not a party, entitles him to ownership of over six acres of property in Montgomery County, Texas. Second, Plaintiff claims that Internal Revenue Service employees exceeded the scope of their authori-

ty in connection with a foreclosure of the same property pursuant to a federal tax lien. Having found no genuine issues of material fact relating to these two issues, the Court grants summary judgment in favor of Defendants. In addition, after construing the complaint in Plaintiff's favor, the Court dismisses Plaintiff's remaining allegations for lack of subject matter jurisdiction or failure to state a cause of action.

This litigation arises from an August 6, 1985 foreclosure sale of certain Montgomery County, Texas real property. Sale was pursuant to a deed of trust signed by Danford P. Vella, who was the record owner of the property at that time but who is not a party to this lawsuit. Plaintiff Elmore bid $23.00 in silver at the sale and claims lawful ownership as a result of his bid. Plaintiff alleges that Defendants' actions, both in connection with the sale of the property and following the sale of the property, wrongfully deprived him of his rights. Plaintiff seeks declaratory relief, injunctive relief and compensatory and punitive damages.

At the March 12, 1986 conference, the Court dismissed Plaintiff's complaint filed pursuant to 42 U.S.C. § 1981 but granted him leave to amend his complaint by March 28, 1986.

During the same conference, the Court converted Defendants' motions to dismiss into motions for summary judgment in order to allow both sides to fully develop the factual assertions behind the pleadings. Fed.R.Civ.P. 12(b); *Northeast Georgia Radiological Ass'n. v. Tidwell,* 670 F.2d 507, 511 n. 7 (5th Cir.1982) *citing* 5 C. Wright & A. Miller; *Federal Practice & Procedure* § 1366 (1969) and 10 C. Wright, A. Miller &

M. Kane, *Federal Practice & Procedure* § 2713 (1983).[1]

Summary judgment is proper when there are no genuine issues of material fact. Fed.R.Civ.P. 56(c). As a result of this Court's converting the pending motions to dismiss into motions for summary judgment, the burden on Defendants has changed. As proponents of the motions, Defendants must convince the Court that judgment in their favor is proper as a matter of law. The Court, in turn, must resolve all doubts in favor of Plaintiff. *See generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2725 (1983). The Court concludes that all Defendants have met their burdens on the summary judgment issues.

■ The first issue for summary judgment concerns Plaintiff's alleged purchase at the August 6, 1985 sale. Plaintiff claims that Substitute Trustee Casey wrongfully entered a bid in the form of a credit in favor of the mortgagee, Heights Savings Association. The bid was for the total amount of indebtedness due Heights from the mortgagor Danford P. Vella. Affidavits of Defendants Perry and Heights, as well as Plaintiff's Exhibits 1, 3 and 4, refer to Vella's deed of trust as authorizing the sale.

In Texas, both statutory notice provisions and contract principles govern foreclosure sales pursuant to deeds of trust. Beyond the minimum statutory notice provisions, *Tex.Prop.Code* § 51.002 (Vernon 1984), contract principles mandate strict conformity to the deed of trust.[2] *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 675 (1942); *Chapa v. Herbster,* 653 S.W.2d 594, 602 (Tex.App.—Tyler 1983, no writ).

**1.** During the conference on March 12, 1986, the Court ordered that affidavits in support of Defendants' motion for summary judgment should be filed *with the Court* by April 14, 1986. Plaintiff incorrectly asserts that Defendants' failure to respond to him *personally* by April 14, 1986 entitles him to "summary judgment default." The Court notes as well that while the affidavit of Substitute Trustee Bob Casey was submitted unsigned on April 14, 1986, Defendant Bracewell & Patterson corrected the error by April 30,

1986, well within the extended deadline of May 21, 1986 set by the Court in its order of May 6, 1986. Furthermore, since Plaintiff has neglected his own filing deadlines, it would be inequitable to accord significance to his claims of formal defects in Defendants' filings.

**2.** The Court finds that the requirements of § 51.002 were met by Heights in foreclosing against Vella.

Consistent with traditional contract principles, Texas case law restricts standing to attack a foreclosure sale pursuant to a deed of trust to the mortgagor or those whose property interests or rights are affected by the sale. *American Savings & Loan Ass'n v. Musick*, 531 S.W.2d 581, 586 (Tex.1976); *Grimes v. Owens*, 539 S.W.2d 387, 390 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

Based on Defendants' affidavits, the Court finds no property interest in Plaintiff prior to the substitute trustee's sale. Plaintiff, however, alleges that he purchased the property lawfully and thereby acquired a property interest. This is Plaintiff's attempt to satisfy the requirement that a party's rights must be affected in order to contest a deed of trust foreclosure sale. Plaintiff's assertions lack merit, however, and fail to raise genuine issues of material fact for several reasons.

■ First, Plaintiff asserts that his $23.00 bid in silver coin overrides the credit entered by the substitute trustee in favor of Heights. It is settled law in Texas that a credit so entered is the equivalent of cash. *Blum v. Rogers*, 71 Tex. 668, 679, 9 S.W. 595, 597 (1888). Further, even those parties whose standing to contest the sale is protected may not complain when a credit bid is entered in favor of a mortgagee in spite of a deed of trust provision requiring a "cash" sale. *See McClure v. Casa Claire Apartments, Ltd.*, 560 S.W.2d 457, 461 (Tex.Civ.App.—Beaumont 1977, no writ) (Holder of the deed of trust cannot attack a credit bid by the mortgagee); *Habitat, Inc. v. McKanna*, 523 S.W.2d 787, 789–90 (Tex.Civ.App.—Eastland 1975, no writ) (Holder of a junior lien was denied standing to complain). Since parties with ascertainable property interests in the foreclosed property may not complain of a credit entered in lieu of cash, Plaintiff may not assert priority over a $24,538.46 credit based on a $23.00 bid in silver coin so as to claim ownership to over six acres of real estate.

Plaintiff's next assertion is that as an artificial entity, Heights Savings Association cannot possess real property; this is incorrect as a matter of law, and therefore raises no issues of fact. *Tex.Rev.Civ.Stat. Ann.* art. 852a § 5.04 (Vernon Supp.1986).

While continuing to note that Plaintiff is not a proper party to contest the sale, the Court nonetheless finds that Plaintiff raises no issue of material fact by his allegation of improper self-dealing by Heights. Plaintiff apparently bases his assertion on the fact that the substitute trustee entered the bid on Heights' behalf. Since Texas law consistently upholds the mortgagee's power to bid at a deed of trust sale, whether directly or through a substitute trustee, the Court finds that the fact that the substitute trustee entered a bid in favor of the mortgagee is immaterial as a matter of law. *American Savings & Loan Ass'n v. Musick*, 531 S.W.2d 581 (Tex.1976); *Tarrant Savings Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex.1964).

The Court thus grants summary judgment in favor of Defendants Scott, Perry and Heights Savings Association on the issue of Plaintiff's claims of ownership of the Montgomery County property in question.

■ The second issue for summary judgment involves Plaintiff's assertions that I.R.S. employees McCammon and Rodriguez exceeded the bounds of their authority in attempting to enforce a federal tax lien on the Montgomery County property. McCammon and Rodriguez offered extensive affidavit and documentary proof relating to both the general course and scope of their duties and their particular involvement with the tax lien foreclosure at issue in this litigation.

First, Plaintiff's allegations that the I.R.S. employees deprived him of his property and committed trespass by enforcing the lien necessarily fail to raise factual issues since the Court has determined that Plaintiff acquired no interest in the Montgomery County property on August 8, 1985.

Plaintiff's remaining allegations that the I.R.S. employees disregarded constitutional

mandates fail as well to raise genuine issues of material fact. Plaintiff failed to refute the I.R.S. Defendants' overwhelming summary judgment evidence concerning the scope and exercise of their authority in connection with the sale. Plaintiff has failed as well to refute the I.R.S. Defendants' proof of operation within the course and scope of their statutory authority. *See* 26 U.S.C. § 6335 (1982); Treas. Reg. § 301.6335–1(b)(2); Internal Revenue Manual ¶ 5361.3. *See also* Defendants' McCammon and Rodriguez Exhibit B. Therefore, the Court finds as a matter of law that Defendants McCammon and Rodriguez were acting within the course and scope of their I.R.S. employment and lawful authority in connection with the attempted foreclosure sale pursuant to a federal tax lien against the former property of Danford P. Vella on October 3, 1985, and grants summary judgment in their favor on that issue.

After construing the pleadings without reference to Defendants' supplementary materials, the Court finds that dismissal of the remainder of Plaintiff's claims is proper. By permitting the parties to offer supplementary proof by affidavit in support of or opposition to Defendants' converted motions for summary judgment, the Court has not precluded dismissal of certain claims. When the Court relies only on the pleadings and concludes that no cause of action exists without consulting the supplementary material, Defendants' original motion to dismiss remains proper. *Ware v. Associated Milk Products, Inc.*, 614 F.2d 413, 415 (5th Cir.1980) (percunam). *See also, Stein v. United Artists Corp.*, 691 F.2d 885, 889 (9th Cir.1982). Dismissal is always proper if the Court lacks subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1393 (1969).

Plaintiff's assertions filed pursuant to 18 U.S.C. §§ 241, 242, 872, 1001, 1341, 1343, 1505, 1621, 1622, 1961, 1962, 1963 and 2381 (1982 and Supps. I & II) must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Actions under these subsections are initiated by the United States as Prosecutor rather than by a private citizen. *See, e.g., Fiorino v. Turner*, 476 F.Supp. 962 (D.Mass.1979) (construing 18 U.S.C. §§ 242, 371, and 1001); *Sinchak v. Parente*, 262 F.Supp. 79 (W.D.Pa.1966) (construing 18 U.S.C. § 242). Likewise, Plaintiff's allegations of a "felony complaint" must be filed with the proper law enforcement agencies.

While 18 U.S.C. 1961, 1962 and 1964 (1982) do permit civil remedies, the Court finds that Plaintiff has failed to substantiate his conclusory allegations that Defendants engaged collectively in "racketeering activity." The Court holds that Plaintiff failed to specifically allege the type of fraud involved, the type of injury to Plaintiff and the requisite pattern of activity necessary to invoke the statute. Consequently, Plaintiff's RICO claims are dismissed. Fed.R.Civ.P. 12(b)(6). *See also* F.R.Civ.P. 9(b); *Willamette Savings and Loan v. Blake & Neal Finance Co.*, 577 F.Supp. 1415 (D.Ore.1984).

Plaintiff also seeks to have the August 8, 1985 sale declared invalid. The Court, however, has determined that Plaintiff acquired no interest at the August 8, 1985 sale, and, therefore, has no standing to challenge the sale. The Court thus necessarily lacks subject matter jurisdiction to declare that sale null and void pursuant to 28 U.S.C. §§ 2201–02 (1982).

Similarly, the Court's grant of summary judgment to Defendants McCammon and Rodriguez renders moot Plaintiff's requests for both declaratory judgment pursuant to 28 U.S.C. § 2201 and injunctive relief. The Court notes, however, that it is settled law in the Fifth Circuit that 28 U.S.C. § 2201 and 26 U.S.C. § 7421(a) both prohibit judicial interference in activities by I.R.S. employees to assess or collect taxes. *Smith v. Rich*, 667 F.2d 1228 (5th Cir.1982).

Turning to Plaintiff's Title 42 complaints, the Court dismisses Plaintiff's 42 U.S.C. § 1983 claim since he has failed to allege acts of either state officials or private citizens under color of state law.

Plaintiff fails as well to state a cause of action under 42 U.S.C. § 1985. Having

taken Plaintiff's pleadings as true and construed all inferences in his favor, the Court fails to detect allegations of racial or class-based animus. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Mere conclusory allegations will not support a cause of action under 42 U.S.C. § 1985 and the Court must dismiss these claims. *Eamest v. Loweretritt,* 690 F.2d 1198 (5th Cir.1982); *United States ex rel. Simmons v. Zibilich,* 542 F.2d 259 (5th Cir.1976).

Since Plaintiff has failed to state a claim under 42 U.S.C. § 1985, the Court dismisses his § 1986 claim as well. *Dooley v. Reiss,* 736 F.2d 1392 (9th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984).

Plaintiff's complaints are replete with assertions of deprivation of constitutional rights. As a corollary to his lack of standing to challenge the foreclosure under Texas law, in order to establish standing to raise allegations of constitutional violations, Plaintiff must allege a "direct and personal injury". *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 752, 70 L.Ed.2d 700 (1982). Plaintiff has failed to allege any such injury. Allegations that the Constitution is violated, without allegations of an injury, must necessarily result in the Court's dismissal of Plaintiff's constitutional claims for failure to state a claim and want of subject matter jurisdiction. Fed.R. Civ.P. 12(b)(6), 12(h)(3). The Court thus

ORDERS that summary judgment is GRANTED in favor of Defendants Scott, Perry and Heights on Plaintiff's claims of ownership of the Montgomery County property. It is further

ORDERED that summary judgment is GRANTED in favor of Defendants McCammon and Rodriguez on Plaintiff's claims arising out of the enforcement of the federal tax lien on the Montgomery County property. It is further

ORDERED that Plaintiff's remaining claims are DISMISSED without prejudice.

■ The law of this circuit requires the Court to give extreme deferrence to *pro se*

plaintiffs and to conduct a thorough review of the facts and circumstances of each case to determine whether the *pro se* plaintiff may have a cognizable claim. In this case, the Court Ordered affidavits to be filed by Defendants and gave Plaintiff an opportunity to supplement the record so that the Court could pierce the pleadings to determine whether Plaintiff has any legitimate claims. After having completed this exercise, the Court has determined that Plaintiff's claims are utterly frivolous and without merit. Furthermore, by being forced to conduct this exercise, the Court has wasted its time and resources as well as the Defendants' in dealing with a nonsensical complaint.

Federal Rule of Civil Procedure 11 states in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, or a good faith argument for the extension, modification, or reversal of existing law ... If a pleading, motion or other paper is signed in violation of this rule, the Court upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including reasonable attorney's fees.

"The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta v. California,* 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 2541, n. 46, 45 L.Ed.2d 562 (1975). Plaintiff has blatantly violated the proscriptions of Rule 11 and his *pro se* status is no excuse for his behavior. The Court is of the opinion that Plaintiff must be sanctioned under Rule 11.

Defendants Perry, Heights, Scott and Bracewell & Patterson have shown their

attorneys' fees incurred in this matter total $12,700.00. The United States has asked for a fine of $2,000.00 for defending this suit on behalf of Defendants McCammon and Rodriguez. The Court finds that in light of all of the facts and circumstances of this case, the amounts prayed for are appropriate sanctions and thus shall award Defendants Perry, Heights, Scott and Bracewell & Patterson $12,700.00 and the United States $2,000.00 as Rule 11 sanctions against Plaintiff. *See, e.g., United States v. Montgomery*, 778 F.2d 222 (5th Cir.1985); *Burroughs v. Wallingford*, 780 F.2d 502 (5th Cir.1986). The Court shall enter a separate Order awarding these sanctions.

The Court further believes that some measures must be taken to protect defendants from frivolous *pro se* lawsuits. While the Court can and will award Rule 11 sanctions to defendants in appropriate cases, the award of such sanctions is a pyrrhic victory as most *pro se* litigants are either indigent or, in any event, without assets subject to execution. Thus, most defendants must bear the cost of defending these cases without any hope of recouping their expenses. For government officials, this burden is borne by the taxpayer, but private persons must bear these expenses themselves.

Furthermore, the problem of frivolous filings by *pro se* litigants is not a minor one. The Court's records show that there are currently over 200 *pro se* plaintiffs with active cases on the docket of the Houston Division of the Southern District of Texas, many of whom have filed multiple lawsuits. This figure does not include prisoner lawsuits and none of the Court's remarks here are directed at prisoner litigation, management of which necessitates procedural modifications currently being implemented. During the first two weeks of this month, this Court alone has had three applications for temporary restraining orders filed by *pro se* plaintiffs, all of which were frivolous. More and more of this Court's time is being consumed by coping with frivolous *pro se* lawsuits. Adjudication of Plaintiff Elmore's case consumed over 50 hours of time of the Court

and its staff, not to mention time spent by the Clerk's office; unfortunately, this waste of time is the rule rather than the exception in *pro se* cases. Moreover, the amount of time spent on these frivolous lawsuits has detracted significantly from the legitimate cases on the Court's docket.

To be certain, the right to file a lawsuit *pro se* is one of the most important rights under our Constitution and laws. The Courts must maintain an open door to those downtrodden members of our society who cannot afford legal assistance. The fact is, however, that in areas where there is an overabundance of lawyers, such as Houston, it is rare indeed when a person with a legitimate complaint cannot find legal assistance on either a contingent fee or *pro bono* basis. While there are no doubt legitimate *pro se* complaints in this Court, the vast majority of *pro se* complaints are frivolous. The defendants in these suits, many of whom are of modest means or indigent themselves, have a right not to be harassed and burdened by frivolous litigation, and the Court has a duty to protect them. The Court also has a duty to see that justice is not delayed to other litigants with legitimate complaints.

Furthermore, the Court does not believe that pampering *pro se* litigants benefits them. *Pro se* litigants often expend substantial resources and energy in prosecuting their claims, only to find their misguided efforts result in failure and substantial sanctions. By permitting the prosecution of these frivolous complaints, the Court is allowing these people to squander the few resources they have to their own detriment. While the law has long sought to protect *pro se* litigants from their adversaries, it is time for the Court to start to protect them from themselves. Moreover, a significant portion of *pro se* litigants appear to have mental or emotional problems. (This is not to imply that Plaintiff Elmore suffers from such problems. As ill conceived as his efforts have been in this case, he does not appear to fall into this category.) Indeed, one prolific *pro se* filer has recently been sent to the federal facility in Springfield, Missouri, for psychiatric evaluation. By giving serious attention to frivolous *pro se*

complaints, the Court often encourages disturbed people in their delusions.

The Court thus is of the opinion that some measures must be taken to rectify this situation, either by reform of the law to permit dismissal of frivolous *pro se* lawsuits without extensive review or by creation of new procedures to cope with this litigation. The Court, however, will take what steps it can to protect defendants and promote judicial economy. Thus, the Court shall by separate Order, order that upon presentation of a complaint by Plaintiff Elmore, the Clerk shall file the complaint and immediately present it to the Court for review. No summons shall issue and no attempt to serve process shall be made until the Court reviews the complaint, finds it is not frivolous, and Orders summons to issue and service to proceed. If the Court finds any such complaint frivolous, the Court shall dismiss it prior to service of process. In addition, the Court shall impose sanctions on Plaintiff Elmore for any frivolous complaint that he files. Plaintiff may then pursue his right to appeal.

While this procedure may not save the Court's resources, it will, hopefully, protect innocent defendants while at the same time preserving Plaintiff's right of access to the courts. Moreover, this type of review will prevent the *pro se* plaintiff from flooding the Court with numerous documents which unnecessarily confuse the record.

The Court finds itself in an unfortunate situation, yet hopefully by exercising its powers under Rule 11 and implementing new measures for coping with frivolous *pro se* lawsuits, the Court can restore some order to this segment of its docket.

### ORDER

Pursuant to the Court's Memorandum and Order of this date in Civil Action No. H–85–5711, the Court ORDERS:

1) that upon presentation to the Clerk of a complaint by Mr. Elmore, the Clerk shall file the complaint, but shall not issue summons;

2) the Clerk shall attach a copy of this Order to the complaint and immediately present it to the Court for review;

3) no attempt to serve the complaint shall be made by any person until the Court reviews the complaint, finds it is not frivolous, and Orders summons to issue and service to proceed;

4) if the Court finds the complaint is frivolous, it shall *sua sponte* dismiss the complaint and impose sanctions on Mr. Elmore; and

5) any deliberate attempt to evade the terms of this Order by Mr. Elmore or anyone acting on his behalf or in concert with him shall result in sanctions, up to and including prosecution for contempt pursuant to 18 U.S.C. §§ 401, 402.